UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ARTHUR TAYAG,
Plaintiff,
v.
COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Case No. 25-cv-06785-BLF

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

[Re: ECF No. 13]

Plaintiff Arthur Tayag appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423 *et seq.* ECF No. 13; *see also* ECF No. 13-1 ("Mot."), 19 ("Reply"). Plaintiff asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, alternatively, to remand for further administrative proceedings. The Commissioner filed an opposition. ECF No. 15 ("Opp."). The matter has been submitted without oral argument, pursuant to Civil Local Rule 16-5. For the reasons discussed below, the Court GRANTS Plaintiff's motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born on December 21, 1984. Administrative Record ("AR") 173, ECF No. 10. After completing high school and two years of college, Plaintiff served in the U.S. Navy from April 26, 2007, to October 28, 2018. AR 35–36, 173. In 2014, Plaintiff suffered a traumatic brain injury ("TBI") caused by a rollover motor vehicle accident while on duty. AR 36, 39, 1260. He was subsequently diagnosed with mild TBI, headaches, and convergence insufficiency; degenerative disc disease of the thoracic and lumbar spine; osteoarthritis of the hand; psoriasis;

United States District Court
Northern District of California

United States District Court
Northern District of California

and major depressive disorder, generalized anxiety, and attention deficit hyperactivity disorder. AR 1651, 2382. Prior to the accident, Plaintiff worked as an air traffic controller. AR 36. After the accident, he worked as a personnel service worker. AR 49.

Treatment notes in the record document Plaintiff's ongoing depression and anxiety, with variations in the intensity of these conditions. Plaintiff was prescribed Sertraline for his mood and Adderall for his reported difficulty with focus. *See, e.g.*, AR 1199–1200, 1204. In 2018, self-reported tests indicated that Plaintiff's depression was "severe," including on September 19, 2018, shortly before Plaintiff's claimed disability onset date. AR 583–84; *see also, e.g.*, AR 598 ("Mood: 'anxious'"), 616 ("Mood: 'depressed'"). On March 14, 2019, Veteran Affairs clinical neuropsychologist Gary Miles, Ph.D., evaluated Plaintiff. AR 1260–64. Dr. Miles noted that Plaintiff's performance on the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") "revealed that he may have exaggerated existing symptoms," and stated that the results would "be interpreted with caution." AR 1261. However, Dr. Miles' other neuropsychological tests showed that Plaintiff had "clinically significant anxiety and depression" and moderate and severe deficits in several types of processing speed and immediate memory, and Dr. Miles concluded that "it is likely that [Plaintiff's] symptoms of depression and anxiety have a negative effect on his cognitive performance." AR 1262–63.

On June 27, 2019, speech pathologist Jeri C. Frakes, M.S., indicated that Plaintiff had "[m]oderate-severe impairment in problem solving characterized by reduced deductive reasoning and problem solving in less structured tasks" but had only "[m]ild-moderately reduced attention (auditory and visual attention)." AR 1206. Similarly, on July 23, 2019, social worker Mark A. Johnson indicated that testing classified Plaintiff's depression as "moderate." AR 1201–02. On September 23, 2019, psychiatrist Ferda Sakman, M.D., diagnosed Plaintiff's major depressive disorder as being "in remission." AR 1334; *see also, e.g.*, AR 1443 (reflecting that Plaintiff's depression fell within the "moderate depression" category in 2020), 1620 (stating that Plaintiff "sounded in good spirits"). However, by August 2, 2021, psychiatrist Shaili Jain, M.D., reported that Plaintiff's mood was "depressed," affect was "anxious," motivation and concentration were "poor," and that Plaintiff reported "more bad days than good days" with "anxiety 4–5 x per week."

United States District Court
Northern District of California

AR 2435.

**B. Procedural Background**

On May 22, 2019, Plaintiff filed an application for disability insurance benefits under Title II of the Act, alleging disability beginning on October 29, 2018. AR 173. An Administrative Law Judge ("ALJ") heard Plaintiff's case on July 27, 2021, and issued a decision denying Plaintiff's application on August 4, 2021. *See* AR 12–24. Plaintiff appealed this decision to the U.S. District Court for the Northern District of California, arguing that the ALJ erred by concluding that his major depressive disorder and generalized anxiety disorder were non-severe at step two and by discounting his subjective testimony as to the severity of these conditions in assessing his residual functional capacity ("RFC"). *See* AR 1774–75. The district court affirmed the ALJ's decision. AR 1776–82. Plaintiff then appealed to the Ninth Circuit. AR 1784. On joint motion to vacate and remand, the Ninth Circuit vacated the district court's judgment and remanded the case for further administrative proceedings. AR 1788; *see also* AR 1789–91.

On October 16, 2024, the Appeals Council vacated the Commissioner's final decision and remanded the case to an ALJ "for resolution of" an enumerated list of "issues," including: (1) the "other neuropsychological tests [conducted by Dr. Miles] that showed moderate deficits in processing speed and immediate memory" and Dr. Miles' conclusion that Plaintiff's "clinically significant anxiety and depression . . . likely ha[d] a negative effect on [his] cognitive domains including [] processing speed [and] concentration"; (2) the "Veterans Affairs' treatment and examination record . . . document[ing] years of ongoing objective support for Claimant's allegations"; and (3) "statements from the claimant's wife and his former supervisor [that] appear to corroborate the claimant's symptom reporting." AR 1798–99.

A second administrative hearing was held telephonically on April 16, 2025. AR 1716–50. At the hearing, Plaintiff requested a closed period of disability through May 4, 2022, because he had returned to work thereafter as a maintenance worker. AR 1722, 1725. When asked by the ALJ, Plaintiff denied that he was able to return to work because of improvements to his mental health or other medical conditions. AR 1726. The ALJ then asked if Plaintiff received any accommodations at work. *Id.* Plaintiff responded: "No. I did not at first . . . ." *Id.* He then

United States District Court
Northern District of California

explained that, at the request of his physician, he was excused from being on call for a month. *Id.* Subsequently, Plaintiff testified that although he was not sure if he was treated differently from other maintenance employees, a supervisor often accompanied him and assisted with physical tasks, he often called for help if a supervisor was not with him, and that he frequently missed time at work due to headaches. AR 1733, 1736–41.

### C. The ALJ's Decision

On May 21, 2025, the ALJ issued a second unfavorable decision finding Plaintiff not disabled. AR 1645–70. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity prior to May 5, 2022, but that he did engage in such activity thereafter. AR 1651. At step two, the ALJ found that Plaintiff had the following severe impairments: traumatic brain injury with neurocognitive symptoms, headaches, and convergence insufficiency; degenerative disc disease (thoracic and lumbar spine); osteoarthritis of the hand; psoriasis; major depressive disorder; general anxiety disorder; and attention deficit hyperactivity disorder. AR 1651. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, to be considered disabled. AR 1655.

The ALJ then considered Plaintiff's RFC under 20 C.F.R. 416.920(e). The ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) subject to several limitations, including that Plaintiff "could understand, remember, and carry out simple instructions." AR 1657. In support of the RFC determination, the ALJ summarized Plaintiff's hearing testimony and the record as it pertained to both physical and mental limitations. AR 1658–64. In particular, the ALJ focused on records indicating that Plaintiff's mental health improved in 2019. AR 1665–67. The ALJ also pointed to the fact that Plaintiff had "some inconsistently good activities of daily living." AR 1666. On these bases, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record and his activities of daily living. Additionally, the ALJ briefly addressed written statements from Ma Ives Tayag, Plaintiff's spouse, and Darlito Gacuya, Plaintiff's former supervisor. AR 1667; *see also* AR 207–09, 245–53. The ALJ discounted both

statements because they were provided in 2018, before any apparent improvement occurred. AR 1667. Finally, the ALJ discussed the examinations by Dr. Miles and Ms. Frakes and discounted portions of their medical opinions. AR 1667–68.

At step five, in consideration of Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner II, hand packager, and store laborer. AR 1669. This conclusion was informed by the testimony of a vocational expert, who testified at Plaintiff's second hearing. Consequently, the ALJ found the Social Security Administration met its burden in demonstrating that other work exists in significant numbers in the national economy that Plaintiff can perform. AR 1669–70.

Based on these determinations, the ALJ concluded that Plaintiff has not been under a disability from January 30, 2018, through the date of the ALJ's decision. AR 1670.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court must

United States District Court
Northern District of California

"consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation modified). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *See id.*

Finally, even when an ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

**B. Standard for Determining Disability**

A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months"; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *see* 20 C.F.R. § 416.920(a)(4) (setting the evaluation standard required for review of Title XVI SSI claims). The RFC referenced at step four is what a claimant can still do despite her limitations.

*Ghanim*, 763 F.3d at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## III. DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ (A) improperly discounted medical opinion evidence; (B) improperly rejected Plaintiff's testimony; and (C) improperly rejected testimony from lay witnesses. Plaintiff also argues that the ALJ erred by (D) asking the vocational expert incomplete hypothetical questions. The Court addresses each challenge to the ALJ's decision in turn.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly discounted portions of medical opinions rendered by Dr. Miles in March 2019 during a neuropsychological evaluation and by Ms. Frakes in February 2019 at a speech pathology appointment by failing to properly assess the persuasiveness of each opinion based on its supportability and consistency. Mot. at 11–14; Reply at 1–4. The Commissioner argues that the ALJ sufficiently considered whether Dr. Miles' opinion was supportable and consistent with the record, and that the limitation to "simple instructions" adequately accounted for Plaintiff's mental limitations. Opp. at 1–4. In reply, Plaintiff argues that the Commissioner waived argument regarding Ms. Frakes' evaluation by failing to address it in opposition. Reply at 3–4.

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006 (citation omitted). To satisfy this responsibility, "[t]he ALJ must include all restrictions in the [RFC] determination," *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013), or "explain why the ALJ chose not to accept them," *Megrditchian v. O'Malley*, No. 23-cv-01734-H-DEV, 2024 WL 4122458, at *5 (S.D. Cal. Sep. 9, 2024) (collecting cases); *see also Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580, 580 (9th Cir. 2012). "The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.*

United States District Court
Northern District of California

§ 404.1520c(b)(2)." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (alterations in original). Supportability concerns how "a medical source supports the medical opinion" with relevant evidence, while consistency concerns how "a medical opinion is 'consistent . . . with the evidence from other medical and nonmedical sources.'" *Id.* at 791–92 (alteration in original) (citation omitted). To reject a medical opinion as unsupported or inconsistent with the record, the ALJ's explanation must be supported by substantial evidence. *Id.* at 792.

The ALJ addressed the speech evaluation and neuropsychological evaluation in adjacent paragraphs. In full, the ALJ wrote as follows:

> There was a speech evaluation noting mild aphasia, mild to moderately reduced attention, and mild memory impairment. There was moderately severe impairment in problem-solving characteristics (Ex. 3F, p. 29) [Ms. Frakes' evaluation at AR 1206]. To the extent that this constitutes an opinion, it is persuasive in part. The moderately severe problem-solving limitation is somewhat supported by the examination findings, including some low-end cognitive findings, but is not consistent with the minimal ongoing mental status evaluation findings and inconsistent good activities of daily living, including ability to perform maintenance work, despite denying improvement. The lack of memory issues is well supported by the cognitive examination and consistent with the minimal memory findings during treatment. However, it is not entirely consistent with some subjective reports and ongoing mood findings. These aspects of the opinion are not persuasive. The remainder of the opinion is interpreted as consistent with the above limitations and is well supported by the evaluation and is consistent with the mental status evaluation findings and good activities of daily living and is persuasive.
>
> To the extent that the recommendations regarding single trail [sic] learning and writing information down, as well as using a planner or making lists indicates limitations, it appears generally consistent with a limitation to simple tasks. To this extent, it is well supported by the examination and is consistent with the minimal mental status evaluation findings and good activities of daily living and is persuasive. However, the need for lists, etc., for the same is not consistent with the same minimal findings and noted improvement. It is not consistent with the good activities of daily living. It is not persuasive (Ex. 3F, p. 86) [Dr. Miles' evaluation at AR 1263], nor supported by the evidence.

AR 1667–68. The Court addresses these challenged passages in the order presented by the Parties, beginning with Dr. Miles' neuropsychological evaluation before turning to Ms. Frakes' speech pathology evaluation.

**i. Dr. Miles' Neuropsychological Evaluation**

Plaintiff argues that the ALJ erred by failing to properly assess whether Dr. Miles' medical opinion was supported and consistent with the record. Mot. at 11. Specifically, Plaintiff argues that because the ALJ found multiple "severe" mental impairments at step two of the sequential evaluation, "the ALJ had already determined that the medical evidence in the record supports the existence of these diagnoses and that the impairments result in significant limitations in [his] ability to perform basic work activities." *Id.* at 12. Accordingly, Plaintiff contends that "it was improper for the ALJ to discount the limitations Dr. Miles assessed based on these severe impairments on the belief that the mental status examination findings were 'minimal' or that [he could] perform certain activities at home." *Id.* Further, Plaintiff argues that the limitation in the RFC to "simple instructions" does not address Plaintiff's "deficits in sustaining attention for a full workday or completing tasks in a timely manner" or "Dr. Miles' opinion that [he] would need some accommodations in order to remember instructions due to his difficulty learning new information on the first trial." *Id.* at 13.

In opposition, the Commissioner argues that the ALJ properly considered whether Dr. Miles' medical opinion is supported and consistent with the record. Opp. at 2. The Commissioner also argues that the Ninth Circuit has held that limiting the RFC to "simple instructions" sufficiently accounts for moderate mental limitations pertaining to concentration and pace. *Id.* at 3–4 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174–76 (9th Cir. 2008)).

Several of Plaintiff's arguments are unavailing. First, the ALJ's step two determination has no bearing on the subsequent RFC determination because "[s]tep two is merely a threshold determination meant to screen out weak claims" and "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). Second, the Commissioner is correct that the Ninth Circuit has repeatedly found that "[t]he limitation to simple repetitive tasks adequately account[s] for [a claimant's] moderate limitations in concentration, persistence, and pace." *Hairston v. Saul*, 827 F. App'x 772, 773 (9th Cir. 2020) (citing *Stubbs-Danielson*, 539 F.3d at 1174). Plaintiff disagrees with this conclusion but offers no basis to distinguish these Ninth Circuit precedents. Reply at 3.

The Court agrees with Plaintiff, however, that the ALJ erred by discounting portions of Dr. Miles' medical opinion based only on purported "minimal findings" in the record and by failing to account for Dr. Miles' medical opinion in the RFC. Mot at 12–13. As the Parties agree, the ALJ was required to address consistency *and* supportability. Mot. at 11; Opp. at 2; *see also Woods*, 32 F.4th at 791–92. But the ALJ addressed only the former. Specifically, the ALJ concluded that "the need for lists, etc., . . . is not consistent with the . . . minimal findings and noted improvement" or "the good activities of daily living" shown in the record. AR 1668. Each of these bases for discounting Dr. Miles' recommendations go only to consistency with the remainder of the record. *See Woods*, 32 F.4th at 791–92. Entirely absent from the ALJ's analysis, however, is any discussion of the neuropsychological evaluation itself and whether it supports Dr. Miles' medical opinion. *See* AR 1668. Instead, the ALJ only discusses Dr. Miles' "recommendations" for "compensatory strategies," which are stated near the end of his report, without ever addressing the underlying medical findings upon which those recommendations are based. *See* AR 1260–64, 1668; *cf. Pennington v. Colvin*, No. 14-cv-1747-KLS, 2015 WL 13237440, at *3 (C.D. Cal. Sep. 11, 2015) (citing *Ghanim*, 763 F.3d at 1163) ("The ALJ also errs by cherry picking the portions of a medical opinion that support his decision while ignoring others.").

Nonetheless, the Commissioner maintains that the ALJ addressed both consistency and supportability, as required. *See* Opp. at 2. However, the Commissioner's argument is fundamentally flawed. The Commissioner purports to restate the relevant portion of the ALJ's decision pertaining to Dr. Miles' findings to show that "the ALJ considered and discussed supportability and consistency when she assessed the persuasiveness of Dr. Miles' opinion." *Id.* However, the Commissioner misattributes Ms. Frakes' findings to Dr. Miles and, like the ALJ, fails to discuss any portion of the neuropsychological evaluation. *See id.*; *see also* AR 1206 (Ms. Frakes' evaluation), 1260–64 (Dr. Miles' evaluation). Thus, the Commissioner's argument carries no weight.

This error was not harmless. The ALJ repeatedly characterized the record as showing "minimal findings" and used that characterization to discount both Dr. Miles and Ms. Frakes'

medical opinions, as well as Plaintiff's testimony and the testimony provided by two lay witnesses, as discussed below. *See* AR 1665–68. Yet, without discussing the findings from the neuropsychological evaluation, it is unclear whether substantial evidence supports the ALJ's view of the evidence. For example, Dr. Miles found that Plaintiff's composite performance for immediate memory (0.1st percentile), logical memory (0.1st percentile), divided attention (0.53rd percentile), and spontaneous verbal recall (0.62nd percentile) each fell within the severely impaired range; Plaintiff's acquisition of unstructured verbal information (1.2nd percentile) and delayed visual memory (1.77th percentile) fell within the moderately impaired range; and other related measures of memory and concentration fell within the mildly impaired range.[1] AR 1261–62. Based on these results, Dr. Miles concluded that Plaintiff's results were "remarkable for moderate deficits on measures with a processing speed component and immediate memory as well as mild deficits on measures of delayed memory" and that his "pattern of performance on measures of immediate memory indicate that he has deficits in single trial learning with improved performance across multiple trials." AR 1262. Dr. Miles further stated that Plaintiff's "responses via the clinical interview and MMPI-2 reveal clinically significant anxiety and depression" and that "it is likely that his symptoms of depression and anxiety have a negative effect on his cognitive performance." AR 1262–63. Accordingly, the ALJ erred by discounting portions of Dr. Miles' medical opinion without addressing whether Dr. Miles' recommendations were supported by the neuropsychological evaluation.

**ii. Ms. Frakes' Speech Pathology Evaluation**

Plaintiff similarly argues that Ms. Frakes' speech pathology evaluation shows that he has "significant deficits in concentration, persistence, and pace which were not adequately captured by the ALJ's RFC for simple instructions." Mot. at 13–14. Plaintiff also argues that the ALJ erred by discounting Ms. Frakes' medical opinion based on "minimal ongoing mental status evaluation

---

[1] Notably, these memory findings appear to be consistent with other evidence in the record. *See, e.g.*, AR 245 (reflecting that Plaintiff's spouse attested that "[h]e can't focus," is "[v]ery forgetful," and "needs to be reminded of all the things needed to be done"), 597 (stating on August 30, 2018, that Plaintiff's "[v]isual learning and memory varied and were weak for learning multiple designs simultaneously"), 1623 (stating on May 28, 2020, that "he has forgotten to bring in copy of his path records and his prior meds, as he has before").

findings and inconsistent good activities of daily living," AR 1668, and that the Commissioner waived this issue by failing to respond, *see* Mot. at 14.

Although the Commissioner did not address Ms. Frakes' opinion by name, the opposition only discusses Ms. Frakes' findings (rather than Dr. Miles' findings) as discussed above, so the issue is not waived. *See* Opp. at 2. Nor is Plaintiff's argument regarding the limitation to "simple tasks" persuasive for the reasons set out above. *See Stubbs-Danielson*, 539 F.3d at 1174; *Hairston*, 827 F. App'x at 773.

Turning to the ALJ's decision to discount Ms. Frakes' finding that Plaintiff has a "[m]oderate-severe impairment in problem solving characterized by reduced deductive reasoning and problem solving in less structured tasks," the ALJ properly addressed supportability. *See* AR 1668 (finding that the limitation "is somewhat supported by the examination findings"). The Court is troubled, however, by the ALJ's generalized analysis of whether this finding is consistent with the record. The ALJ asserted that this limitation is "not consistent with the minimal ongoing mental status evaluation findings," but did not identify any specific evidence pertaining to problem solving that contradicts this finding. *Id.* As discussed above, the ALJ also failed to address the findings from the neuropsychological evaluation, which may affect the ALJ's conclusion that the record showed minimal mental status evaluations. Similarly, the ALJ asserted that the limitation is also "inconsistent [with] good activities of daily living, including [the] ability to perform maintenance work." *Id.* But the ability to perform maintenance work refers to Plaintiff's employment after the closed disability period, rather than an activity that was contemporary with Ms. Frakes' findings. Regardless, it is unclear how the ability to perform maintenance work indicates that Plaintiff has a higher capacity for deductive reasoning and problem solving in less structured tasks than Ms. Frakes assessed. Thus, the ALJ has not identified substantial evidence supporting the decision to discount Ms. Frakes' findings.

* * *

Accordingly, the Court finds that the ALJ erred in discounting portions of Dr. Miles and Ms. Frakes' medical opinions. The RFC was therefore deficient because the ALJ did not adequately account for all the restrictions identified in the medical record. *See Stubbs-Danielson*,

539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace [or other mental limitations] where the assessment is consistent with restrictions identified in the medical testimony.").

**B. Claimant's Subjective Testimony**

Next, Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for rejecting his subjective symptom testimony and instead did "little more . . . than recite the objective medical evidence and then assert that it is inconsistent with [Plaintiff's] testimony without tying any specific parts of the evidence to any of the specific limitations [he] described in his testimony." Mot. at 15–19. The Commissioner argues that "the ALJ appropriately considered the lack of evidentiary support for Plaintiff's alleged limitations, his activities of daily living, effectiveness of medication in controlling symptoms, and conservative treatment for his physical complaints." Opp. at 5–8.

"The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (citation omitted). It applies when, as here, the ALJ concludes that the claimant is not malingering and has "provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged." *Brown-Hunter*, 806 F.3d at 492–93. Under this standard, the ALJ may not rely on general findings and must instead "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation modified). In *Brown-Hunter*, for example, the Ninth Circuit explained that "it is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are [not] credible." 806 F.3d at 493 (alterations in original) (citation omitted). The court therefore held that the ALJ erred by stating the "non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC determination." *Id.* at 494. The Court finds that the ALJ committed the same error here.

Here, the ALJ stated that "[a]s below, the claimant's subjective symptoms are not consistent with the evidence" and then proceeded to summarize the record. AR 1661–65.

Likewise, at the end of the decision, the ALJ concluded that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are contradicted by the conservative treatment for his physical complaints and only mild or minor radiograph and physical examination findings, as well as improvement with treatment and also, by the mostly normal range mental status evaluation findings and inconsistent but good activities of daily living.

AR 1668. Under *Brown-Hunter*, neither conclusory statement is sufficient because the ALJ does not identify which statements are inconsistent or provide specific reasons for the purported inconsistency. *See* 806 F.3d at 493–94.

Nor is the remainder of the ALJ's analysis sufficient under the heightened clear and convincing standard. When relying on objective medical evidence to discredit a claimant's testimony, the ALJ must explain how the medical evidence is inconsistent with the testimony by making "specific findings in support of that conclusion." *Treichler*, 775 F.3d at 1103 (internal quotation marks and citation omitted). Here, the ALJ never identified what testimony lacks credibility, referring instead only to the fact that Plaintiff "alleged cognitive and social limitations." AR 1666; *see also Greger*, 464 F.3d at 972 (requiring the ALJ to "specifically identify what testimony is credible" (citation omitted)). Meanwhile, the ALJ's conclusion that these "allegations are not entirely consistent with the record" is supported only with general findings and references to the summary of the record, which are inadequate under *Brown-Colvin*. *See* AR 1666 (stating that Plaintiff "had little in the way of cognitive findings during the mental status evaluations, which were primarily normal" and "remained relatively minimal," even if Plaintiff "did have some ongoing mood findings . . . and some vaguely reported ongoing cognitive findings."); *see also* Opp. at 5 (arguing that the ALJ "properly considered that Plaintiff's statements about the alleged intensity, persistence, and limiting effects were not entirely consistent with the medical evidence of record, which the ALJ *summarized at length* in her decision." (emphasis added)).

The Court remains concerned, too, by whether substantial evidence supports the ALJ's characterization of the medical record. *See Pennington*, 2015 WL 13237440, at *3 ("The ALJ also errs by cherry picking the portions of a medical opinion that support his decision while ignoring

others.”). As discussed above, the ALJ failed to address Plaintiff’s neuropsychological evaluation, which may undermine the conclusion that the record reflects mild and normal cognitive findings. The ALJ also repeatedly focused on evidence of improvement in 2019 without ever addressing why subsequent records showing continued depression, anxiety, and associated symptoms did not alter the ALJ’s analysis. *See, e.g.*, AR 1214 (“Pt appears visibly anxious during this interview,” conducted on June 19, 2019), 1585–86 (diagnosing Plaintiff with major depressive disorder on April 29, 2021, after noting that Plaintiff’s mood was “irritable, sad, frustrating” and his concentration and motivation were “poor”), 1605 (“Mood: depressed, anxious” on September 17, 2020), 2435 (“Motivation: poor” and “[c]oncentration: poor” on August 2, 2021).

Additionally, the ALJ concluded that Plaintiff “has some inconsistently good activities of daily living.” AR 1666–67. A claimant’s daily activities may be considered to the extent those activities are inconsistent with the claimed severity of his impairments, or when those activities indicate “capacities that are transferable to a work setting.” *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012), *superseded by regulation on other grounds*. However, “disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. . . . Only if the level of activity [is] inconsistent with [c]laimant’s claimed limitations [do] these activities have any bearing on . . . credibility.” *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, the ALJ did not explain *why* the identified activities—*i.e.*, the fact that Plaintiff “reported doing cardio and weight training,” “travel[ed] to the Philippines for an extended period[] and more than once,” set up his daughter’s computer for school during the Covid-19 pandemic, and watched movies and television shows—are inconsistent with Plaintiff’s claimed limitations.[2] AR 1666–67; *see also* AR 1727. Like with the medical record, the ALJ offers only a summary of the record, rather than identifying specific conflicts with Plaintiff’s testimony or

[2] The Commissioner’s opposition brief also argues that the fact that Plaintiff was “helping [a] friend with catering business, expressed desire to start his own similar business with his brother, and plans to volunteer with brain tumor society where his friend works,” and that he dropped his daughter off at kindergarten and cleaned around the house are inconsistent activities of daily living. Opp. at 5–6. However, the ALJ did not identify these as bases for discounting Plaintiff’s testimony and the Court “may not affirm the ALJ on a ground upon which [s]he did not rely.” *Garrison*, 739 F.3d at 1010.

claimed limitations.

Finally, the ALJ concludes that the fact that Plaintiff returned to work in May 2022 is inconsistent with finding that he is disabled. AR 1666–67. Plaintiff argues that returning to work is immaterial because he testified that he receives accommodations at work, which he contends is consistent with the statement provided by his supervisor from his prior job. Mot. at 18; *see also Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI."). The Commissioner argues that the ALJ appropriately determined that there is no objective record evidence to show that Plaintiff received accommodations at his new job. Opp. at 6. But the absence of evidence outside the claimed disability period is not a conflict. As other courts have recognized, "return[ing] to work at the end of a closed period is not inconsistent with a claim of disability during the closed period." *Aaron S. v. Comm'r of Soc. Sec.*, No. C18-5984-BAT, 2019 WL 2223910, at *5 (W.D. Wash. May 23, 2019).

In sum, the ALJ erred because she "failed to identify the testimony she found not credible[] [and therefore] did not link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Thus, the Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony.

**C. Lay Witness Testimony**

Plaintiff similarly argues that the ALJ improperly discounted the written statements provided by Ms. Tayag, his spouse, and Mr. Gacuya, his former supervisor, because the ALJ failed to provide specific and legitimate reasons germane to each witness for doing so. Mot. at 19–21. The Commissioner argues that "the ALJ is no longer required to provide reasons germane to [non-medical sources] to reject their testimony." Opp. at 8–9 (alterations in original) (quoting *Wendy J. C. v. Saul*, No. 19-cv-01434-AC, 2020 WL 6161402, at *12 n.9 (D. Or. Oct. 21, 2020)). In any event, the Commissioner argues that the ALJ appropriately considered the

statements by Ms. Tayag and Mr. Gacuya. *See id.*

Historically, lay witness testimony has been viewed as providing valuable insight into a claimant's daily practices, which can help to determine a claimant's limitations and disabilities. *See, e.g., Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) ("Although eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether she is disabled or malingering, we have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account") (citing *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996)). Accordingly, the Ninth Circuit has previously stated that "[i]f the ALJ wishes to discount the testimony of the lay witnesses, [s]he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

The Commissioner asserts that the germane reasons standard no longer applies to claims filed on or after March 27, 2017, because the agency amended its regulations. The Ninth Circuit has not issued guidance on this point. *See Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *2 (9th Cir. May 13, 2025) (declining to "decide whether those regulations constitute 'intervening higher authority' that is 'clearly irreconcilable' with our [germane reasons] precedent"). And district courts are divided on the issue. *Compare Wendy*, 2020 WL 6161402, at *12 n. 9 (holding that the germane reasons standard no longer applies), *and Rummel v. Comm'r of Soc. Sec.*, No. 2:21-cv-202-KJN, 2022 WL 3999860, at *9 (E.D. Cal. Sep. 1, 2022) (same), *with Gardner v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-00321-TUC-LCK, 2023 WL 6173220, at *6 (D. Ariz. Sep. 21, 2023) (holding that the germane reasons standard does apply).

The Court need not resolve this issue here because the ALJ *did* provide reasons for discounting each lay witness' testimony. The appropriate inquiry, therefore, is simply whether the ALJ's decision is supported by substantial evidence. The Court concludes that it is not. First, the ALJ discounts both Ms. Tayag's and Mr. Gacuya's statements to the extent they are inconsistent with "the improvement with treatment, minimal mental status evaluation findings, and only sporadic and inconsistent positive findings." AR 1667. But as explained above, the ALJ failed to

consider significant medical evidence from the neuropsychological evaluation, so it is not yet clear whether Plaintiff's findings are in fact minimal or inconsistent with either statement.

Second, the ALJ also misrepresented Ms. Tayag's testimony. The ALJ incorrectly states that Ms. Tayag testified that Plaintiff did "not need[] reminders," AR 1667, when she testified to the opposite, *see* AR 245 ("He can't focus. He needs to be reminded of all the things needed to be done. Very forgetful."). That error is significant because it reflects that the ALJ misstated additional potentially-corroborative evidence regarding memory and concentration, like the neuropsychological evaluation, despite receiving explicit instructions from the Appeals Council to appropriately consider that portion of Ms. Tayag's statement. *See* AR 1799 (instructing the ALJ to address Ms. Tayag's testimony that Plaintiff "had difficulty focusing, needed reminders, was forgetful, [and] . . . needed spoken instructions repeated").

Accordingly, the ALJ erred in discounting the lay witness testimony provided by Ms. Tayag and Mr. Gacuya. This evidence should be considered within the context of the entire administrative record, including Dr. Miles' neuropsychological evaluation, to determine its appropriate weight.

**D. Vocational Expert**

Finally, Plaintiff argues that the ALJ asked the vocational expert incomplete hypothetical questions that resulted in unreliable testimony. Mot. at 21–22. Specifically, Plaintiff argues that "the ALJ omitted [his] credible allegations, the limitations described by the lay witnesses, and the limitations assessed by several examining providers, as detailed above." *Id.* at 22. The Commissioner argues that "Plaintiff's fourth argument is derivative of his first three." Opp. at 9. The Court agrees and does not address this argument separately.

**E. Remedy**

The Act permits district courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Garrison*, 759 F.3d at 1019. Plaintiff requests that the Court remand for an award and calculation of benefits because the record is fully developed. Mot. at 22–23. The Commissioner opposes this request, arguing that "the moderate mental limitations as noted by Dr. Miles do not require additional RFC

limitations."[3] Opp. at 10.

"An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Court may remand for an immediate award of benefits only where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* at 1045. The Court must also determine, based on the record as a whole, that there is no "serious doubt that [the] claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

These requirements are not satisfied here. The Court is sympathetic that, by remanding, it is further delaying a final decision in a case that has lingered. There are outstanding issues, however, to be resolved regarding the appropriate weight to give Dr. Miles' neuropsychological evaluation, which the Court cannot do in the first instance. Additionally, although the Court recognizes that Plaintiff's new job arose after the end of the disability period and is therefore not within the typical window of consideration, the record may benefit from further development to clarify Plaintiff's prior testimony.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED. The determination of the ALJ is DENIED and the case is REMANDED to the Commission.

Dated: September 8, 2026

BETH LABSON FREEMAN
United States District Judge

[3] Again, the Court notes that the Commissioner appears to be misattributing medical findings to Dr. Miles.